UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

CHUZA OIL COMPANY,                                                    No. 18-11836-t7

      Debtor.

PHILLIP J. MONTOYA,
Chapter 7 Trustee of the Bankruptcy
Estate of Chuza Oil Company,

      Plaintiff,

v.                                                                              Adv. No. 20-1007-t

AUDREY GOLDSTEIN,

      Defendant.

## OPINION

The chapter 7 trustee brought a $20,650 fraudulent transfer claim against Audrey Goldstein, a former employee of Debtor. Ms. Goldstein is the daughter of Debtor's owner and former president, Bobby Goldstein. After trial, the Court finds that Ms. Goldstein never got any of the money. Instead, she received three checks payable to her, endorsed them, and deposited them into her father's bank account or the account of one of his other businesses. As she was not a transferee of the money, the Court will enter judgment in her favor.

A.    Facts.[1]

The Court FINDS:

---

[1] The Court takes judicial notice of its docket in this case, the main bankruptcy case, Debtor's 2014 chapter 11 case, no. 14-12842-t11, and the related adversary proceeding of *Montoya v. Goldstein*, Adv. no. 20-1027. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket[s]).

On July 25, 2018, creditors filed an involuntary chapter 7 bankruptcy petition against Debtor, commencing this case. Philip Montoya was appointed chapter 7 trustee. Robert Goldstein ("Bobby") is Debtor's owner and former president. Audrey Goldstein ("Audrey") is Bobby's daughter.

In May and June 2016, Debtor was a struggling business, operating under a confirmed chapter 11 plan of reorganization. Although Debtor had some income from oil sales, it was not enough to pay operating expenses. Bobby and his company Bobby Goldstein Productions, Inc. ("BGPI") transferred a substantial amount of money to Debtor to keep it afloat.[2] From time to time, if there was enough money in Debtor's accounts, Debtor would pay back some of the money to Bobby and/or BGPI.[3]

The trustee's claim against Audrey is based on three of Debtor's checks, payable to her, totaling $20,650. The checks were signed by Bobby on behalf of Debtor and were issued in May-June 2016.[4] At the time, Audrey was 17 years old and worked as a "runner" for Debtor. Per her father's instructions, Audrey took the checks to Plains Capital Bank (where Bobby and BGPI had

---

[2]For example, BGPI deposited $35,000 into Debtor's bank account on June 15 and $45,000 into Debtor's bank account on June 17, 2016.

[3] Most of the transfers from Debtor to Bobby are at issue in a separate adversary proceeding, *Montoya v. Goldstein*, adv. pro. 20-1027.

[4] May 26, 2016, a $650 check was made payable to Audrey; a $10,000 check made payable to Audrey on June 21, 2016, was endorsed and deposited into Bobby's personal account on the same day; and a $10,000 check made payable to Audrey on June 22, 2016, was endorsed and deposited into a BGPI account on the same day.

accounts), endorsed them, and deposited them into his account or a BGPI account.[5] Bobby testified

that this procedure allowed him to avoid a "3-day hold" that would have been imposed if he had

been the payee on the checks. Audrey did not use, obtain, control, or benefit from the money.

The trustee's complaint was based on Debtor's bank records, which showed only that the

checks were payable to Audrey and were presented for payment. The complaint included the

following allegations:

> 18.     On or about May 26, 2016, the Debtor transferred $650.00 to the Defendant
> by check number 1122 made from Debtor's business checking account at Green
> Bank, N.A (the "May 26 Transfer").
> . . .
> 20.     On or about June 21, 2016, the Debtor transferred $10,000.00 to the
> Defendant by check number 1183 made from Debtor's business checking account
> at Green Bank, N.A. (the "June 21 Transfer")
> . . .
> 22.     On or about June 22, 2016, the Debtor transferred $10,000.00 to the
> Defendant by check number 1186 made from Debtor's business checking account
> at Green Bank, N.A. (the "June 22 Transfer").

Audrey admitted these allegations in her answer, filed March 6, 2020. She did not assert

the "conduit" defense (discussed below).

Based on Debtor's bank records and Audrey's answer to the complaint, the chapter 7

trustee had no reason to question whether Audrey got the $20,650. That changed, however, on July

3, 2020, when Audrey amended her answer to a trustee interrogatory to the following:

> Interrogatory No. 5: Please state in detail the complete factual and legal basis for
> your affirmative defense that the Defendant received the Transfers for substantial

---

[5] Counsel for the trustee objected to the admission of Bobby's/BGPI's bank statements as hearsay. He did not object to their authenticity. The Court overruled the objection. If a proper foundation is laid, bank records may be admitted under an exception to the hearsay rule, i.e., as records of a regularly conducted activity. *See* Fed. R. Evid. 803(6); *U.S. v. Johnson*, 971 F.2d 562, 571 (10th Cir. 1992). "A foundation for admissibility may at times be predicated on judicial notice of the nature of the business and the nature of the records as observed by the court, particularly in the case of bank and similar statements." *Id.* (quoting *Fed. Deposit Ins. Corp v. Staudinger*, 797 F.2d 908, 910 (10th Cir. 1986)); *see also Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc.*, 2013 WL 311846, *18 (D.N.M.) (same).

-3-
Case 20-01007-t    Doc 35    Filed 02/12/21    Entered 02/12/21 15:51:39 Page 3 of 12

new value, as stated in paragraph 56 of the Answer to Complaint . . . .

> Amended Answer: . . . . Bobby Goldstein . . . can testify that the check for $650 which he signed was to reimburse him for costs incurred for Chuza, as noted on the check. He can testify that Audrey Goldstein received none of the money and he can testify that the two $10,000 transfers were not for Audrey but were written to her in order to deposit them into his accounts, where she deposited them.
> Documents are the three checks, the Deposit Tickets for Audrey's deposit of $10,000 into Bobby Goldstein's account on June 21, 2016 and her deposit of $10,000 into Bobby Goldstein Productions Inc. account at Plains Capital Bank on June 22, 2016.

The amended interrogatory response alerted the trustee that the $20,650 went to Bobby, not Audrey, and that Audrey was a mere conduit. Unfortunately, Audrey never sought to amend her answer to assert the conduit defense before trial. Indeed, instead of amending her answer, Audrey agreed to a "Stipulated Order Establishing Facts for Trial" (the "Stipulated Facts") that included the three "transferred" allegations quoted above.

At trial, Audrey's counsel argued and litigated the conduit defense, i.e., that Audrey was not the "initial transferee" under § 550[6] because she never had control over or any interest in the $20,650. The trustee's counsel timely objected to Audrey raising the conduit defense, citing her answer to the complaint and the Stipulated Facts. In response, Audrey's counsel moved to amend her answer to include the conduit defense. The trustee's counsel objected and the Court took the dispute under advisement.

B.      § 550.

§ 550 provides in relevant part:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoid[able] . . . . the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from—
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made[.]

---

[6] All statutory references are to 11 U.S.C. unless otherwise specified.

"Initial transferee" is not defined in the Bankruptcy Code. However, it is widely accepted that a "mere conduit" or agent who lacks dominion, control, or a beneficial interest in the transferred property is not an "initial transferee" within the meaning of § 550(a)(1). 5 Collier on Bankruptcy ¶ 550.02[4][a] states:

> many courts have found that a party acting merely as a conduit who facilitates the transfer from the debtor to a third party is not a 'transferee' and, therefore, not the initial transferee. Rather, these courts have held that the minimum requirement of status as a 'transferee' is dominion over money or other assets for one's own purposes.

The "mere conduit" defense, also known as the "dominion or control test," was articulated by the Seventh Circuit in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir. 1988). In *Bonded* the debtor sent a $200,000 check to its bank with instructions to deposit the money into "Ryan's" account. 838 F.2d at 891. The bank did so. Ten days later, Ryan—who had borrowed $650,000 from the bank—instructed the bank to debit his account by $200,000 and reduce his loan balance accordingly. *Id.* The case trustee brought a $200,000 fraudulent transfer claim against the bank, arguing that it was the initial transferee of the money. *Id.* The court ruled against the trustee, stating that the bank "held the check only for the purpose of fulfilling an instruction to make the funds available to" Ryan. *Id.* Ryan, as the person "for whose benefit the transfer was made," was the initial transferee. *Id.* at 893, 895. "As the bank saw the transaction. . . it was Ryan's agent for the purpose of collecting a check from [the debtor's] bank. . . . [It] had no dominion over the $200,000 until . . . Ryan instructed the bank to debit the account to reduce the loan; in the interim, so far as the bank was concerned, Ryan was free to invest the whole $200,000 in lottery tickets or uranium stocks." *Id.* at 893-94.

The *Bonded* court stated further:

We are aware that some courts say that an agent . . . is an 'initial transferee' but that

courts may excuse the transferee from repaying using equitable powers.[7]  This is misleading. 'Transferee' is not a self-defining term; it must mean something different from 'possessor' or 'holder' or agent'. To treat 'transferee' as 'anyone who touches the money' and then to escape the absurd results that follow is to introduce useless steps; we slice these off with Occam's Razor and leave a more functional rule.

. . . .

[T]his appeal to 'equity' –to deny recovery against an 'initial transferee' within the statute—is different in source and in scope from the way in which we have employed considerations of policy to *define* 'transferee' under § 550(a)(1).

*Id.* at 894-95 (citations omitted). Thus, "[w]hen A gives a check to B as agent for C, then C is the 'initial transferee'; the agent may be disregarded." *Id.* at 893.

The Tenth Circuit has adopted *Bonded's* conduit/dominion or control defense. *See Malloy v. Citizens Bank of Sapulpa*, 33 F.3d 42, 43-44 (10th Cir. 1994) (quoting *Bonded* and adopting the conduit defense); *see also Rupp v. Markgraf*, 95 F.3d 936, 938-39 (10th Cir. 1996) (noting that, in *Bonded*, "the Seventh Circuit enunciated what is commonly referred to as the 'conduit' theory for determining whether an intermediary . . . is an 'initial transferee' for purposes of § 550" and that approach was adopted by the Tenth Circuit in *Malloy*).

C.     Audrey was not an "Initial Transferee."

Here, the evidence is clear and uncontradicted that Audrey was a mere conduit for

---

[7]The conduit theory is widely accepted. However, courts that construe § 550 in a "literal" sense are admonished to use their equitable powers under § 105 to avoid the absurd result of allowing the trustee to recover from the debtor's agent. *See* Collier, ¶ 550.02[4][b] ("In some circumstances, where a literal application of section 550(a) would permit the trustee to recover from a party who acted merely as a conduit, the bankruptcy court should use its equable powers to prevent an inequitable result."); *In re Harwell*, 628 F.3d 1312, 1322-23 (11th Cir. 2010) ("the mere conduit or control test" "is an exception [to the literal interpretation of § 550] based on the bankruptcy courts' equitable powers"); *see e.g.*, *In re Fabric Buys of Jericho, Inc.*, 33 B.R. 334, 337 (Bankr. S.D.N.Y. 1983) (reasoning that an entity that had acted as a "mere conduit" of funds was not an "initial transferee" but even if it were, the court would use its equitable discretion to prevent the trustee from recovering a preference against it); *see Bonded*, 838 F.2d at 894 (citing *In re C-L Cartage Co.*, 70 B.R. 928 (Bankr. E.D. Tenn. 1987)).

-6-

transferring the $20,650 from Debtor to Bobby or BGPI. Bobby or BGPI, rather than Audrey, was the initial transferee.

This should have been an easy win for Audrey. The result is clouded, however, by the admissions in Audrey's answer, the Stipulated Facts, and Audrey's failure to assert the conduit defense before trial.

D.      Rule 15(b)(1).

Audrey's conduit defense is nowhere to be found in her answer. It should have been front and center—it is her only defense. *See* Fed. R. Civ. P. (8)(c)(1) (requiring a party to affirmatively state any avoidance or affirmative defense in responding to a pleading).[8] Yet from the date of the answer to the morning of trial, the conduit defense was never asserted in any pleading. The failure to plead the defense is inexplicable.

On the morning of trial, Audrey's counsel moved to amend her answer to assert the conduit defense. Fed. R. Civ. P. 15(b)(1), made applicable by Fed. R. Bankr. Pro. 7015, provides:

> If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits.

The federal rules should be liberally construed to secure just determinations on the merits of any action. *See, e.g.*, *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (the rules are designed "to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties"); Fed. R. Civ. P. 1 (the federal rules should be

---

[8] Most courts view the conduit defense as an affirmative defense. *See, e.g. Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) ("[T]he mere conduit defense is an affirmative defense[.]"); *In re Palm Beach Fin. Partners, L.P.*, 488 B.R. 758, 769 (Bankr. S.D. Fla. 2013) (same); *In re DVI, Inc.*, 2008 WL 4239120, *3 (Bankr. D. Del.) (same); *In re Petters Co., Inc.*, 557 B.R. 711, 722 (Bankr. D. Minn. 2016) (treating the conduit rule as an affirmative defense).

Case 20-01007-t    Doc 35    Filed 02/12/21    Entered 02/12/21 15:51:39 Page 7 of 12

"construed, administered, and employed by the court and the parties to secure the just . . .

determination of every action and proceeding"); *see also* Wright & Miller, 6A, Fed. Prac. & Proc.

Civ. § 1491 (Federal Rule 15(b) is designed "to avoid the tyranny of formalism" and to "promote

the objective of deciding cases on their merits rather than in terms of . . . the claim or defense that

was made at a preliminary point in the action").

> With respect to a Rule 15(b)(1) amendment, the Tenth Circuit has stated:

> The general rule is that a party waives its right to raise an affirmative defense at
> trial when the party fails to raise the defense in its pleadings. However . . . the liberal
> pleading rules established by the Federal Rules of Civil Procedure apply to the
> pleading of affirmative defenses. Therefore, we must avoid hypertechnicality in
> pleading requirements and focus, instead, on enforcing the actual purpose of the
> rule." Rule 8(c)'s ultimate purpose is simply to guarantee that the opposing party
> has notice of any additional issue that may be raised at trial so that he or she is
> prepared to properly litigate it. When a plaintiff has notice that an affirmative
> defense will be raised at trial, the defendant's failure to comply with Rule 8(c) does
> not cause the plaintiff any prejudice. And, when the failure to raise an affirmative
> defense does not prejudice the plaintiff, it is not error for the trial court to hear
> evidence on the issue.

*Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1076 (10th Cir. 2009) (alterations

and citations omitted). Further:

> If evidence of an unpleaded affirmative defense is objected to, Rule 15(b)(1) gives
> the trial court discretion to permit the amendment of the pleadings over the
> objection when it will promote the presentation of the merits of the action, the
> adverse party will not be prejudiced by the late assertion of the defense, and the
> adverse party has ample opportunity to meet the issue.

Wright & Miller, 6A, Fed. Prac. & Proc. Civ. § 1492.

The "most important[] factor in deciding a motion to amend the pleadings is whether the

amendment would [unduly] prejudice the nonmoving party." *Minter*, 451 F.3d at 1207. "There is

invariably some practical prejudice resulting from an amendment, but this is not the test for refusal

of an amendment." *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971). Rather, the test "is whether

the allowing of the amendment produce[s] a grave injustice to the [nonmoving party]." *Id.*

Audrey's ability to assert the conduit defense is critical to her case. The Court concludes that denying the motion to amend and excluding Audrey's undisputed "mere conduit" evidence would substantially prejudice Audrey. When the checks were written, Audrey was a 17-year-old runner. She got none of the $20,650. She should not be held liable to the trustee for money she never received. By comparison, prejudice to the trustee would be minimal: he would lose a case he perhaps should not have taken to trial, but he would retain his fraudulent transfer claim against the initial transferee—Bobby.

Further, the trustee was not surprised by the assertion of the conduit defense. Audrey laid out the facts of her defense in July 2020, six months before trial. The trustee's counsel acknowledged researching the conduit defense before trial, apparently to object if the defense was raised.

Any minimal prejudice to the trustee is significantly outweighed by the injustice of not allowing Audrey to amend her answer. *See Patton*, 443 F.2d at 86 ("In our view it is more likely that substantial justice would have suffered had the motion to amend been denied."). The Court will grant Audrey's motion to amend her answer to assert the conduit defense.

E.    The Stipulated Facts.

The trustee also argues that Audrey, having agreed to the Stipulated Facts, cannot deny that she was a "transferee." It is true that stipulations, once agreed to, cannot simply be set aside:

> In our judicial system, "[s]tipulations fairly entered into are favored." *Burstein v. United States,* 232 F.2d 19, 23 (8th Cir. 1956). Factual stipulations tend to "expedite a trial and eliminate the necessity of much tedious proof." *Id.* As a result, "parties to a lawsuit are free to stipulate to factual matters." *Saviano v. Commissioner of Internal Revenue,* 765 F.2d 643, 645 (7th Cir. 1985). They are, however, not generally free to extricate themselves from those stipulations once crafted. Due to the interest in preserving the efficiency attained through stipulations, "[t]he general rule ... [is] that stipulations of attorneys made during a trial may not be disregarded or set aside at will...." *Marshall v. Emersons Ltd.,* 593 F.2d 565, 569 (4th Cir. 1979) (citing *Maryland Cas. Co. v. Rickenbaker,* 146 F.2d 751, 753 (4th Cir. 1944)); *see*

*also* 73 Am.Jur.2d, Stipulation § 1 (1974).

*T I Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir. 1995); *see also Federal Trade Comm. V. Kutzner*, 2017 WL 2985397, at *10 (C.D. Cal.) (stipulations fairly entered into are favored).

Stipulations are not immutable, however. In at least three instances, it it appropriate for a court to relieve a party from a stipulation.

First, a party can get relief if she and the other party never had a meeting of the minds on an important term. "Litigation stipulations can be understood as the analogue of terms binding parties to a contract." *DelBonis*, 72 F.3d at 928; *see also Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1186 (10th Cir. 2018) (quoting *DelBonis*). "The primary rule in interpreting written contracts is to ascertain the intent of the parties." *Lincoln,* 900 F.3d at 1186 (quoting *BancInsure, Inc. v. FDIC*, 796 F.3d 1226, 1233 (10th Cir. 2015)). A basic tenet of contract interpretation is that provisions susceptible to different interpretations are ambiguous, so their meanings must be resolved by the fact finder. *Mark V, Inc. v. Mellekas*, 845 P.2d 1232, 1235 (N.M. 1993). Here, the parties did not have a shared understanding of what "transferred" meant when they agreed to the Stipulated Facts. Audrey's counsel said he admitted the "transferred" allegations because he thought money could be transferred to Audrey without her becoming a "transferee." The Court questions whether Congress intended "transfer" to have different meanings within the same Code section. Regardless, it seems clear the parties did not have a meeting of the minds on the meaning of "transferred." *See*, *e.g.*, *Shoels v. Klebold*, 375 F.3d 1054, 1067 (10th Cir. 2004) ("When the language of a contract contains a latent ambiguity and one of the parties is in fact assenting to something different from what the other party agrees to, the upshot of that 'mistake' is that there was never a meeting of the minds as to a material term[.]") Lacking a meeting of the minds on this essential point, "there was never any contract at all," *Id.*, so Audrey is not bound by the stipulation.

Second, "[r]elief from erroneous stipulations is especially favored where the mistake made concerns a legal conclusion." *DelBonis*, 72 F.3d at 928; *see also Koch v. U.S. Dep't of Interior*, 47 F.3d 1015, 1018 (10th Cir. 1995) ("It is well-settled that a court is not bound by stipulations of the parties as to questions of law." (alterations omitted)); *Lincoln v. BNSF Ry Co.*, 900 F.3d 1166, 1188 (10th Cir. 2018) ("[R]elief from erroneous stipulations is especially favored where the mistake made concerns a legal conclusion[.]"). Whether the $20,650 was "transferred" to Audrey, making her the "initial transferee," is a least partly a question of law. *See Rupp*, 95 F.3d at 938 (the statutory meaning of "initial transferee" is "a purely legal issue" subject to de novo review); *Malloy*, 33 F.3d at 43 (same). Audrey was a mere conduit and not the initial transferee. The Court is not bound by a stipulation to the contrary.

Finally,

> Case law is clear that "a stipulation of counsel originally designed to expedite the trial should not be rigidly adhered to when it becomes apparent that it may inflict a manifest injustice upon one of the contracting parties." *Id.* at 568. Parties will usually be relieved of their stipulations where it becomes evident that "the agreement was made under a clear mistake." *Brast v. Winding Gulf Colliery Co.,* 94 F.2d 179, 180 (4th Cir. 1938).

*DelBonis*, 72 F.3d at 928 (citing *Marshall v. Emersons Ltd.*, 593 F.2d 565, 568 (4th Cir. 1979). Thus, even if the Stipulated Facts bind Audrey to the status of the "initial transferee," the Court will set them aside to avoid a manifestly unjust result. *See, e.g., Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.*, 532 F.3d 1063, 1075 (10th Cir. 2008) (stipulations are not absolute and will be set aside to prevent manifest injustice); *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1097–98 (10th Cir. 1991) (same).

The Stipulated Facts do not require entry of a judgment against Audrey. To the extent, if any, she needs relief from her "transferred" stipulation, the Court hereby grants it.

Audrey was a mere conduit for the $20,650 at issue. Although she did not assert the conduit defense until trial, her counsel alerted the trustee to the defense six months before. To avoid manifest injustice, the Court will grant Audrey's motion to amend her answer, and rules that the Stipulated Facts do not bar the conduit defense. Finally, the Court will allow the trustee to amend his complaint in the pending adversary proceeding against Bobby to seek recovery of the $20,650. The Court will enter a separate judgment consistent with this opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: February 12, 2021

Copies to: counsel of record.